```
            UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF OHIO
                  WESTERN DIVISION
```

Robert Geiger,                  :   Case No. 1:06-cv-874
                                :
    Plaintiff,              :
                                :
vs.                             :
                                :
Kraft Foods Global, Inc.        :
                                :
    Defendant.              :

**ORDER**

Before the Court is Defendant's motion for entry of partial summary judgment. (Doc. 23)  Plaintiff sued Defendant alleging he was terminated from his position because of his age. Defendant contends that Plaintiff's claim for back pay and front pay are limited as a matter of law, because he rejected Defendant's unconditional offer of reinstatement.  For the reasons discussed below, the Court grants the motion.

**FACTUAL BACKGROUND**

Plaintiff Robert Geiger started work for Kraft Foods in December 1983 as a Cincinnati area sales representative.  In 2001, he was given additional duties and his title was changed to Retail Category Manager.  According to Geiger, the majority of those additional duties were taken away from him in late 2004, and he continued to do the sale representative duties he had done from the start.  His official job title of Retail Category Manager (RCM) was not changed, however, to reflect this change in

-1-

duties.  Geiger also retained his RCM salary grade, which was one grade higher than a sales representative position.

Kraft began a restructuring of its customer development and business teams, resulting in reductions in force in early 2006.  Jim Curran, a Kraft VP, states that certain RCM positions within the company were targeted for elimination, based on desired productivity numbers.  Geiger's position was eliminated during this process, and his termination was effective April 28, 2006.

When Geiger was told of the decision to terminate his job, he protested to several company superiors that he was an RCM "in name only," and was essentially and effectively performing the sales representative job he had always performed.  He told them that he was 51 years old, that he had excellent relationships with his sales customers, and that his previous job reviews were always consistently among the best.  He asked that he be permitted to continue to work as a sales representative, either with his current route or in another route.  Despite his protests, he was not permitted to stay with the company.

Geiger testified that Kraft treated him well during his 23 years with the company.  The only incident of age discrimination he alleges is the company's elimination of his position.  He also got along very well with his former supervisor, and admits that no one at Kraft made ageist discriminatory remarks to or about him.  After Geiger was terminated, a much younger woman took over

Geiger's sales route, to which Kraft added one additional store. Geiger was asked and agreed to train his replacement before his termination date. After he was terminated, Geiger had access to a Kraft website that listed available jobs at Kraft; he checked that website every day for several weeks, but no sales representative jobs were posted. Geiger accepted another job with a different company on July 5, 2006. His new position pays him less in salary and benefits than he received at Kraft.

A few weeks after he was terminated, Geiger had lunch with his former supervisor Robert Smith. Smith told Geiger that Smith believed he had a good claim against Kraft for age discrimination. (Doc. 24, Geiger Affidavit ¶11) Smith was not involved in the decision to terminate Geiger.

Geiger filed a charge of age discrimination with the EEOC on June 12, 2006, and conciliation efforts started over the summer. On August 14, Geiger was contacted by an EEOC conciliator who told him that Kraft offered to reinstate him as a sales representative at a Grade 4 salary. (Sales representatives were then classified as salary Grade 6, and Geiger's former RCM position was in Salary Grade 7.) Kraft's offer was contingent on Geiger dismissing his discrimination claims, and he rejected that offer.

On September 12, 2006, Kraft's Senior Labor Counsel, Pam Parrish, wrote to Geiger's counsel. Her letter states in

-3-

pertinent part:

> Kraft is offering Mr. Geiger the opportunity to return to work in a Sales Rep position. The job will have substantially the same job duties and responsibility as the job that Mr. Geiger contends he was performing prior to his separation from Kraft. In connection with the reduction in force earlier this year, a number of changes were made within the sales organization and in the Sales Rep job. If Mr. Geiger is reinstated to work, we have offered to treat him the same as all other Sales Reps at Kraft. This means that the job will be a salary grade 6 position until January 1, 2008. At that time, consistent with the salary grade handling for all other Sales Reps, the salary grade will become grade 4.
>
> His salary, again consistent with the handling of the salary for other employees in the Sales Rep position, will be retained until January 1, 2010 (unless Mr. Geiger applies for another position with a different salary grade). The bonus target for 2006 will be 15%, and 10% for years thereafter. Mr. Geiger's service time will be bridged and he will be covered by the benefits plans in which he was previously participating.
>
> During our conference call on August 31, 2006, Mr. Robert Smith [Geiger's former supervisor] explained some of the changes that have occurred in the Sales organization since Mr. Geiger worked at Kraft. As Mr. Geiger knows, there have been a number of employee reductions and he may be aware that the sales routes have been reconfigured. On the other hand, Mr. Geiger has long since worked with Mr. Smith, who would be his supervisor, and I believe that they had, and will continue to have, a good working relationship. The route to which Mr. Geiger would be assigned will primarily have Kroger stores on it, but Mr. Geiger has called on Kroger in the past and Mr. Smith does not feel that this will be a difficult adjustment

for him. Moreover, he will be given the identical orientation and other information that all of the Sales Reps were given when Kraft changed its business methods earlier this year.

    This unconditional offer will not require Mr. Geiger to release or in any way compromise any legal claims he has or may have against Kraft. Moreover, please be advised that Kraft takes its commitment to equal employment opportunity very seriously and, in this regard, will be sure that there is no discrimination or retaliation against Mr. Geiger. (However, by giving this assurance, Kraft is in no way acknowledging that Mr. Geiger was the victim of discrimination as he has alleged.) As I mentioned during our conference call, I personally spoke to the Region's Vice President and have his assurance that Mr. Geiger will not be retaliated against because he has pursued a claim against Kraft.

    During our call, you inquired if Kraft would pay Mr. Geiger's attorneys fees; pay for a new car he purchased; or pay for his back wage losses. I explained that, since Mr. Geiger could have used the EEOC's resources without retaining counsel, the subject of fees would need to be resolved between you and him. Regarding the new car, I said that perhaps he could sell it or he may have a family member who needs a car; if he returns to Kraft, he will be provided a car in accord with the Company's Automobile Policy. Finally, while I said that Kraft would not pay back pay for the last month, since the return-to-work offer had been outstanding for a month, we would consider some backpay and I invited you to contact me with a proposal concerning this subject.

    If you or Mr. Geiger have any questions, would like some information concerning any point, and/or if you would like to propose something concerning back wages, please let me know.

(Doc. 24, Geiger Affidavit Exhibit 5.)  The letter also stated that the offer would remain open until September 19, 2006.

Mr. Geiger, through his counsel, rejected Kraft's offer in a September 18, 2006 letter.  (Doc. 30, Geiger Deposition Exhibit B)  His letter states in pertinent part:

> Mr. Geiger has read your fax of September 12, 2006.  He has considered Kraft's settlement offer and has decided to reject it.  It is not a reasonable offer in light of the fact that it does not put him back in the position he would have been but for Kraft's actions in terminating him.  There are several areas in which Kraft's offer is deficient.  A non-exhaustive list of those deficiencies follows.
>
> First, Kraft is not offering to fully compensate Mr. Geiger for his back wage losses.  Granted, the offer states that you would consider some back-pay, but you also clearly indicate that it would be limited. . . .
>
> Second, the settlement offer is not reasonable in that it does not offer compensation for other losses suffered by Mr. Geiger as a result of his termination.  One such loss is the benefit of a company car.  In order to secure employment in his field, Robert was required to purchase a car.  Thus, in addition to the loss of salary, he has incurred auto expenses he did not have prior to April of 2006. . . .
>
> Kraft's settlement offer does not contemplate any compensation for the emotional strain this matter has placed upon Mr. Geiger.  As indicated in many of Robert's personnel reviews, Kraft knew that he has a child with special needs.  He is his family's principal provider.  His termination caused him a great deal of anxiety with respect to his ability to provide continuing support for

>    his family, and particularly his son.
>
>    Third, the face of Kraft's offer is also deficient because it does not provide Mr. Geiger compensation for the attorney fees he has incurred in pursuing this matter. . . .
>
>    Aside from these deficiencies, and those not expressed, Robert is reluctant to accept any offer than requires re-employment with Kraft. . . .

Geiger also stated he remained open to continued negotiations with Kraft. The parties were unable to reach any agreement. Geiger's complaint in this case was filed on December 21, 2006.

## DISCUSSION

The familiar standards governing Rule 56 motions apply to a motion seeking judgment on a single issue - here, whether Geiger's claim for back pay is tolled by his rejection of the reinstatement offer. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253 (1968)).

The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. Guarino v. Brookfield Township Trs., 980 F.2d 399, 404 (6th Cir. 1992); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. den., Superior Roll Forming Co. v. InterRoyal Corp., 494 U.S. 1091 (1990). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

    The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at

250. "If the evidence is merely colorable, . . . , or is not significantly probative, . . . , the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted).

Although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citations omitted).

An age discrimination plaintiff has a duty to mitigate his damages. In Ford Motor Company v. Equal Employment Opportunity Commission, 458 U.S. 219, 231-232 (1982), the Supreme Court held that, absent special circumstances, a discrimination plaintiff ". . . forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied. Consequently, an employer charged with unlawful discrimination often can toll accrual of backpay liability by unconditionally offering the claimant the job he sought, and thereby providing him with an opportunity to minimize damages." The Court also held that an unconditional offer need not include make-whole relief, nor

concede the full extent of the employee's claimed damages.

The Sixth Circuit held that an offer of reinstatement releases the employer from back pay obligations from the date the employee rejects the offer. Morvay v. Maghielse Tool & Die Co., 708 F.2d 229 (6th Cir. 1983). That case, arising from a claim of wrongful discharge under the NLRA, listed several factors to determine if the reinstatement offer effectively tolls back pay. An offer is insufficient for this purpose if it is conditioned upon an employee's reapplying for his job; if it does not restore seniority or other accrued benefits; if the offered job is only temporary; if the offer is conditioned upon the employee relinquishing his claim; or if the employee has insufficient time to accept. Morvay, 708 F.2d at 232 (internal citations omitted). The employee's refusal to accept a reinstatement offer is evaluated under the reasonable person standard, considering all of the facts and circumstances surrounding the offer. See, e.g., Fiedler v. Indianhead Truck Line, Inc., 670 F.2d 806, 808-809 (8th Cir. 1982). One such relevant circumstance is whether the employee suffered any harassment from filing the discrimination charge, or alleges any adverse working conditions the employee faced during the course of the employment.

Thus, in order to grant summary judgment on this question, the Court must find an absence of disputed facts as to whether (1) Kraft's offer was unconditional, and (2) Geiger's rejection

-10-

was unreasonable under the circumstances.

Geiger first argues that the offer letter is inadmissible under Fed. R. Evid. 408 as part of ongoing settlement negotiations between the parties.  The Court disagrees.  The premise underlying the Supreme Court's decision in Ford Motor Co. - to encourage resolution and avoid prolonged disputes over discrimination claims - would be subverted by excluding evidence of an employer's unconditional offer to reinstate an employee. Several courts have held that such offers are not encompassed by Rule 408.  See Holmes v. Marriott Corp., 831 F.Supp. 691, 711 (S.D. Iowa 1993); Mullins v. U.S. Bank, N.A., 2007 U.S. Dist. LEXIS 51654 (S.D. Ohio, July 17, 2007) (Sargus, J.), at *26; and see, Knox v. Cessna Aircraft Co., 2007 U.S. Dist. LEXIS 71528 at *30 (N.D. Ga, September 26, 2007).

Neither party has discussed Stockman v. Oakcrest Dental Center, PC, 480 F.3d 791 (6th Cir. 2007).  There, the Sixth Circuit held that a defendant's offer to reinstate the plaintiff should not have been admitted during a jury trial, because the offer fell within the scope of Rule 408's prohibition on admissibility of settlement offers to prove or disprove the validity or amount of plaintiff's age discrimination claim.  The facts in Stockman differentiate it from this case, however. There, Dr. Stockman sold his dental practice and entered into an employment agreement with the buyer.  His employer eventually

-11-

terminated him based on his alleged reduced billings and inefficient practices.  Stockman sued for age discrimination, based on his termination and his progressively worsening working conditions at the clinic.  Two years after suit was filed and shortly before trial, the employer offered to reinstate him.  Stockman attempted to accept reinstatement but proposed other conditions and refused to dismiss his claims; the employer then withdrew the offer.  The district court refused to enforce the reinstatement offer because no valid contract had been agreed to.  But the district court also ruled that Stockman could introduce the offer if the employer introduced evidence at trial regarding his alleged failure to mitigate damages.  The offer letter was then admitted over the employer's objection.

The Sixth Circuit held the offer letter was clearly a conditional offer, contingent on Stockman's agreement to dismiss his case, and therefore fell within the scope of Rule 408.  The Sixth Circuit noted: "Where, as here, a party has raised an issue going to the validity or amount of a claim, that is insufficient for admitting settlement offers that go to the same issue because to do so violates Rule 408 on its face.  To argue otherwise would eviscerate Rule 408's protection and undermine its clear purpose.  It would be unreasonable to expect a party to ever make a settlement offer if doing so forced it into choosing between conceding one or more elements of liability or damages or having

-12-

the offer admitted against it." Id. at 798-799.

Here, in contrast, the issue of the letter's possible admissibility at trial is not before the Court.  More importantly, however, unlike the offer in Stockman, Kraft's September 12 offer was unconditional: Kraft specifically stated it was not asking Geiger to relinquish his claims.  The fact that settlement negotiations under the EEOC's aegis occurred prior to the September 12 offer does not change the unconditional nature of the offer Kraft made.  See, e.g., Lightfoot v. Union Carbide Corp., 110 F.3d 898, 909 (2d Cir. 1997): "By definition, an unconditional offer may not require the employee to abandon or modify his suit, and no such request was made by defendants. The offer therefore cannot be considered an offer of settlement or compromise."  The same is true here.  Rule 408 does not prevent this Court from considering the offer and Geiger's rejection of it in ruling on the pending motion.  (This conclusion should not be viewed as any indication of how the Court would approach the use of the letters at trial, as that question is not before the Court at this time.)

Geiger next argues that Kraft's offer was not made in good faith.  He notes that he filed his EEOC claim in June 2006, and Kraft made no attempt to reinstate him for at least two months.  Kraft's first offer in August was for a job with a lower salary, and required him to dismiss his claims.  Only after Geiger

rejected this offer did Kraft make him its subsequent, unconditional offer.  Geiger also suggests that Kraft's motives for negotiating with Geiger are suspect, because by engaging in conciliation efforts Kraft "avoided" submitting a written response to Geiger's EEOC charges.  (The EEOC issued its right to sue notice on September 26, a few days after Geiger rejected Kraft's reinstatement offer.)  This argument is not entirely clear.  If Geiger is suggesting that Kraft engaged in conciliation efforts merely to forestall submitting a response to his charges, there is simply no evidence to support that suggestion.  Kraft's September 12 letter is clear and unambiguous in setting forth the terms of the unconditional reinstatement offer.  The Court concludes that Kraft's offer was made in "good faith," and not as a subterfuge or out of any ill will or bad faith motive.

Geiger also argues that summary judgment is improper on the question of whether his rejection of Kraft's offer was "reasonable."  His letter initially rejecting the offer stated that he would not be made whole by the offer due to lost back pay, car expenses, and attorney's fees.  But the Supreme Court made clear in Ford Motor that "make whole" relief is not required for a valid, unconditional reinstatement offer.  Kraft's offer would have restored Geiger to the position that he alleged he was working (Sales Representative, Grade 6) and that he wanted to

keep. Kraft also offered to "bridge" Geiger's service time, and restore all benefits which he was previously receiving.

In response to Kraft's motion, Geiger argues that all of the circumstances and the facts known to him at the time must be measured, and that those facts and circumstances prevent summary judgment. Geiger emphasizes the efforts he made to convince Kraft that he was in reality working as a sales representative, not an RCM, when he was told his job would be eliminated. He points to his 22-year career with Kraft, during which he received good to excellent reviews, his long-standing relationships with Kraft customers, and his excellent relationship with his supervisor, all of which Kraft ignored in determining to eliminate his position. He also suggests he reasonably feared returning to work at Kraft because he was terminated despite his efforts, and the knowledge of his superiors that he was an RCM "in name only." He also alleges that his supervisor told him to go ahead and take a planned, expensive vacation in April, despite Geiger's direct questions on whether his job was going to be eliminated. He also notes that he had already accepted another job by the time Kraft offered to reinstate him.

A review of cases finding a jury question on the reasonableness of an employee's rejection of a reinstatement offer reveal that Geiger's reasons are not sufficient to withstand summary judgment. For instance, Geiger cites <u>Bragalone</u>

v. Kona Coast Resort Joint Venture, 866 F.Supp. 1285 (D. Hawaii 1994). There, plaintiff was fired after an incident of insubordination with a supervisor, with whom she had repeatedly clashed. Her employer investigated the incident, offered to reinstate her, reprimanded the supervisor, and told plaintiff that she would be able to report to a different supervisor upon her return to work. She refused the offer, arguing it was unreasonable for her to return to work and face the harassment that led to her termination. The district court disagreed, noting plaintiff's lack of evidence of any serious harassment (the supervisor was "merely" quite unpleasant), and the employer's assurance that plaintiff would not have to deal with that supervisor upon her return.

Similarly, in Morris v. American Nat. Can Corp., 952 F.2d 200, 203 (8th Cir. 1991), the Eighth Circuit found a plaintiff's rejection of an unconditional offer unreasonable. Plaintiff alleged, and the trial court found, that she had endured ongoing and pervasive sexual harassment. Nevertheless, the district court concluded that the employer's unconditional offer of reinstatement, made approximately six months after she resigned because of the harassment, was reasonable and that plaintiff's back pay claim was tolled from the date the offer was made. Plaintiff argued it was unreasonable to expect her to return to the work environment. But the Eighth Circuit disagreed,

-16-

crediting the employer's good faith assurances that she would be protected from any continuing harassment in determining that plaintiff unreasonably refused the offer.

And in Holmes v. Marriott Corp., 831 F.Supp. 691 (S.D. Iowa 1993), an employee was terminated after many years of working his way up through the ranks at Marriott, and he alleged age discrimination.  He was terminated in July 1990, and Marriott offered to unconditionally reinstate him in May 1991, almost a year later.  Plaintiff, through his counsel, responded with a counter-offer essentially asking for make-whole relief, which the district court held was an unreasonable rejection of the unconditional offer of reinstatement.  The district court found that triable issues of fact precluded summary judgment on the question of whether plaintiff had been discriminated against, but capped his damages recovery from the date the unconditional offer had been made.

In contrast, cases finding triable issues on the employee's rejection typically involve harassment or discrimination raising a serious question of whether an employee's return to the workplace would be reasonable.  See, e.g., Ortiz v. Bank of America Nat'l Trust, 852 F.2d 383, 386-87 (9th Cir. 1988), where plaintiff had medical evidence that due to the harassment and stress she had endured, she was unable to work at all, and especially that she "should never work at any branch of the

-17-

[defendant] again." And in Lewis v. Federal Prison Indus., 953 F.2d 1277, 1280 (11th Cir., 1992), plaintiff was subjected to such harassment and discriminatory conduct that he suffered from acute depression after his constructive discharge. His treating physician testified that it would recur if he returned to his job, even if no additional discrimination actually took place. The physician characterized Lewis' decision to stay away from employment at FPI as "a very good, sound, healthy decision." In view of these circumstances, and that he was only a few years away from retiring, his damage claims were not tolled by his rejection of the reinstatement offer.

Here, Geiger offers no such similar circumstances. He admits that he never experienced any harassment during his career at Kraft, and that he and his supervisor got along well and remain friends. Geiger does not contest the fact that Kraft's offer was for a position substantially equivalent to the one he claims he held before his termination. While the Court appreciates that Geiger may have sincerely believed that the reinstatement offer was not in his best interests, that subjective belief is insufficient to raise a triable issue on the question of whether his refusal of Kraft's offer was anything but unreasonable.

For the foregoing reasons, the Court grants Defendant's motion for partial summary judgment (Doc. 23) Plaintiff's claims

-18-

for back and front pay are tolled from September 18, 2006, the date that Plaintiff rejected Kraft's unconditional offer of reinstatement.  The stay previously imposed on these proceedings is lifted.  The parties are referred to the Magistrate Judge for a scheduling conference to set new dates for completion of discovery, filing of dispositive motions, and final pre-trial and trial dates.

    **SO ORDERED.**

Dated: March 3, 2008                      <u>s/Sandra S. Beckwith</u>
                                            Sandra S. Beckwith, Chief Judge
                                              United States District Court